# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Leonard F. Joy
*Executive Director*

June 20, 2008

Southern District of New York
John J. Byrnes
*Attorney-in-Charge*

**By Hand and ECF**

Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007

      Re: **United States v. Mady Diakite**
            S1 08 CR 362 (LAP)

Dear Judge Preska:

    I write, in the above captioned case, to move for dismissal of the remaining count against Mr. Diakite, which charges him with "aggravated identity theft." I ask the Court to accept this letter as a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(2).

## Factual Background

    Mr. Diakite was arrested on April 8, 2008, at 26 Federal Plaza as he was arriving, accompanied by his immigration attorney, at a scheduled appearance with the Bureau of Immigration and Customs Enforcement. On April 22, 2008, a three-count indictment was filed, charging Mr. Diakite with bank fraud, access device fraud, and aggravated identity theft. An initial conference was held on April 25, 2008, at which time Mr. Diakite entered a plea of not guilty to all three counts.

    Discovery was initially provided on May 8, 2008. Subsequent to this initial production of discovery, the government indicated in discussions with defense counsel that it sought to enhance Mr. Diakite's guideline range with additional loss based on relevant conduct that was not included in the discovery provided. A second conference was held on June 2, 2008, at which time Mr. Diakite indicated his desire to plead guilty to Counts One and

Honorable Loretta A. Preska  June 20, 2008
United States District Judge  Page 2
Southern District of New York

      Re:  **United States v. Mady Diakite**
            **S1 08 CR 362 (LAP)**

Two, and his desire for a trial on Count Three. Mr. Diakite did not plead guilty at that time because no Pimentel letter had been provided, nor had the discovery relating to the relevant conduct been provided. A trial date of June 30, 2008 was set for a trial on the charge of aggravated identity theft.

    On June 12, 2008, the government filed a superseding indictment which added three additional counts of bank fraud. On June 13, 2008, Mr. Diakite was arraigned on the superseding indictment, and entered a plea of not guilty. On that same date, additional discovery was provided. On the following Monday, June 16, 2008, the government provided Mr. Diakite with a revised Pimentel letter in which it indicated, again, that it was opposing any acceptance of responsibility for Mr. Diakite unless he pleaded guilty to the entire indictment. The revised Pimentel letter also reflected an additional loss amount greater than $120,000. No additional discovery was provided to support this additional loss amount.

    On June 18, 2008, five days after the receipt of discovery, Mr. Diakite entered a plea of guilty to Counts One through Five of the superseding indictment. In his plea allocution, Mr. Diakite admitted that he had used two false names to open bank accounts for the purpose of committing access device fraud and bank fraud. The false names Mr. Diakite used, as set forth in the superseding indictment, were "Ibrahima Conde" and "Moussa Sylla." A trial on the remaining count, now Count Six, remains scheduled for June 30, 2008.

    Yesterday, on June 19, 2008, the government proffered to defense counsel that it did not intend to prove that the "means of identification" used in relation to Counts One through Five were the false names "Ibrahima Conde" and "Moussa Sylla." The government proffered that it would likely <u>not</u> be able to prove that the identities used by Mr. Diakite, "Moussa Sylla" and "Ibrahima Conde," belonged to actual persons, as required by Section 1028A(a)(1).

    Rather the government intends to prove, that the "means of identification" Mr. Diakite used in connection with Counts One through Five was the payor name "Tony Suarez" used on the American Express convenience checks, which were deposited into

Honorable Loretta A. Preska  June 20, 2008
United States District Judge  Page 3
Southern District of New York

Re: **United States v. Mady Diakite**
    **S1 08 CR 362 (LAP)**

one of the bank accounts opened by Mr. Diakite. The government intends to prove that Tony Suarez is an actual person, and that his name was used on the American Express convenience checks deposited into the account opened in the name of Ibrahima Conde.[1]

The government proffered that it had no direct evidence that Mr. Diakite knew the identifying information of Tony Suarez belonged to an actual person. The government's position is that it need not prove that Mr. Diakite knew that the "means of identification" he used in relation to his bank fraud and access device fraud belonged to an actual person, but that if required to prove such knowledge, it intends to do so, "by inference."

Based on this proffer, the government does not have sufficient evidence to establish that Mr. Diakite's offense conduct satisfies all the elements of Count Six, and that count should be therefore be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(2).

## Summary of Argument

The Court should dismiss Count Six of the superseding indictment in this case because under no set of circumstances does Mr. Diakite's offense conduct satisfy the *mens rea* requirement of § 1028A(a)(1). It is clear from both the language of the statute and the legislative history that the conduct at issue in this case is not the type of conduct the aggravated identity statute was intended to reach.

Based on the plain language of the statute, or the rule of lenity if the Court finds the statutory language to be ambiguous, the Court should find that § 1028A(a)(1) requires the government to prove beyond a reasonable doubt that Mr. Diakite knew the

---

[1] The government also indicated that it may seek to prove that other "means of identification" were used on other checks which were deposited, but that none of the "means of identification" relate to the false identifying information Mr. Diakite used to open the bank accounts referenced in Counts One through Four of the superseding indictment.

Honorable Loretta A. Preska                          June 20, 2008
United States District Judge                         Page 4
Southern District of New York

**Re: United States v. Mady Diakite**
**S1 08 CR 362 (LAP)**

"means of identification" used in connection with access device fraud and bank fraud belonged to an actual person. Because the government will be unable to meet this burden, Count Six of the indictment, which charges Mr. Diakite with "aggravated identity theft," must be dismissed.

The government is seeking to improperly expand the use of the statute for the sole purpose of constraining the Court's sentencing discretion. Section 1028A(a)(1) requires the Court to impose a mandatory minimum sentence of two years to run consecutively to the sentence imposed on Counts One through Five. In no way is Mr. Diakite's offense conduct "identity theft" as contemplated by Congress when it enacted section 1028A(a)(1). Rather, Mr. Diakite's offense conduct is bank fraud and access device fraud, offenses to which he has already pleaded guilty in timely fashion, and for which he is awaiting the imposition of sentence by the Court.

**The statute requires the government to prove beyond a reasonable doubt that Mr. Diakite knew the "means of identification" belonged to another person.**

18 U.S.C. § 1028A(a)(1) (Aggravated Identity Theft) states that, "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."

Courts have split over the proper interpretation of the scienter requirement of § 1028A(a)(1). Some courts have held that, in order to obtain a conviction under this statute, the government need only prove that an individual used a means of identification that belonged to another person during the commission of one of the enumerated felony violations. See, e.g., United States v. Mendoza-Gonzalez, 520 F.3d 912 (8th Cir. 2008); United States v. Hurtado, 508 F.3d 603 (11th Cir. 2007); United States v. Montejo, 442 F.3d 213 (4th Cir. 2006); United States v. Aguilar-Morales, 2007 U.S. Dist. LEXIS 73801 (N.D. Iowa 2007); United States v. Godin, 489 F. Supp. 2d 118 (D. Me. 2007).

Honorable Loretta A. Preska                    June 20, 2008
United States District Judge                   Page 5
Southern District of New York

      Re:   **United States v. Mady Diakite**
              **S1 08 CR 362 (LAP)**

    Other courts have held that a defendant may only be convicted if the government can prove that the defendant knew that the "means of identification" actually belonged to another person.  See e.g., United States v. Villaneuva-Sotelo, 515 F.3d 1234 (D.C. Cir. 2008)(affirming pre-trial dismissal of the aggravated identity theft count because the government could not prove that the defendant knew the means of identification belonged to another person); United States v. Sanchez, 2008 U.S. Dist. LEXIS 35460 (E.D.N.Y  April 30, 2008); United States v. Mejorado-Cordova, 2008 U.S. Dist. LEXIS 44634 (D. Utah, June 5, 2008); United States v. Hairup, 2008 WL 471710 (D. Utah 2008); United States v. Salazar-Montero, 520 F. Supp. 2d 1079 (N.D. Iowa 2007); United States v. Beachem, 399 F. Supp. 1156 (W.D. Wash. 2005).

    Although this is an open question in the Second Circuit, at least two district courts in the Eastern District of New York have recently ruled that the government must prove that the defendant knew that the "means of identification" belonged to another person in order to obtain a conviction under 18 U.S.C. § 1028A(a)(1).  See United States v. Sanchez, 2008 U.S. Dist. LEXIS 35460 (E.D.N.Y  April 30, 2008); United States v. Dawes, 07 Cr. 555 (ARR) (E.D.N.Y. May 16, 2008) (jury charge enclosed with this submission). The Court should follow the persuasive reasoning of these courts.  Because the Government will not be able to prove that Mr. Diakite knew the "means of identification" (the name "Tony Suarez" used on the American Express convenience checks) he used in connection with his bank fraud and access device fraud actually belonged to another person, the Court should dismiss Count Six.

    **A.**    **The plain language of the statute requires the government to prove that Mr. Diakite knew the "means of identification" belonged to an actual person.**

    At least two courts have found that the plain language of the statute requires that the "knowingly" requirement be applied to the entire predicate that follows, which includes the language "of another person."  See United States v. Salazar-Montero, 520 F. Supp. 2d 1079, 1092 (N.D. Iowa 2007); see also United States v. Hairup, 2008 WL 471710 (D. Utah 2008) ("When one simply engages in a plain reading of the statute, instead of a hyper-

Honorable Loretta A. Preska                          June 20, 2008
United States District Judge                         Page 6
Southern District of New York

      Re:  **United States v. Mady Diakite**
            **S1 08 CR 362 (LAP)**

technical grammatical analysis, it seems that the word 'knowingly' . . . modifies the entire divisible predicate . .")

     The court in Salazar-Montero, in analyzing the plain language of the statute observed that the modifier "knowingly" has been "placed as close as possible to the entire, indivisible predicate: 'transfers, possesses, or uses, without lawful authority, a means of identification of another person.'" Salazar-Montero, 520 F. Supp. 2d at 1092 (N.D. Iowa 2007) The court could discern no "reasoned basis to subdivide this predicate, so that the 'knowingly' requirement applies only to 'transfers, possesses, or uses,'" id. and went so far as to describe the alternative reading, which does subdivide the predicate, as "nonsensical." Id.

     Reading the aggravated identity theft provision in conjunction with the next provision of the same statute (§ 1028A(a)(2)) lends support to the conclusion that the knowledge requirement of § 1028A(a)(1) travels beyond the phrase "means of identification" to modify the entire phrase that follows. Section 1028A(a)(2) states,

> Whoever, during and in relation to any felony violation enumerated in section 2332(g)(5)(B), knowingly transfers, possesses or uses, without lawful authority, a means of identification of another person *or a false identification document* shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 5 years." 18 U.S.C. 1028A(a)(2) (emphasis added).

As noted by the court in Villanueva-Sotelo, the "government concedes that section 1028A(a)(2)'s knowledge requirement must apply to the whole phrase 'false identification document,'" Villanueva-Sotelo, 515 F.3d at 1239.  It is unreasonable to presume that the scienter requirement travels farther in this provision than in the one immediately proceeding it.

     Further, Supreme Court precedents support the conclusion that the scienter adverb "knowingly" may be extended to modify the entire phrase that follows it.  See United States v. X-

Honorable Loretta A. Preska                          June 20, 2008
United States District Judge                         Page 7
Southern District of New York

            Re:   **United States v. Mady Diakite**
                   **S1 08 CR 362 (LAP)**

Citement Video, Inc., 513 U.S. 64 (1994) ("It is difficult to conclude the word 'knowingly' modifies one of the elements in [a] subsection . . . but not the other."); Liparota v. United States, 417 U.S. 419, 424 (1985) ("either interpretation would accord with ordinary usage"); see also Model Penal Code 2.02(4)(1985)("When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such a provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.").

    Therefore, the Court should find that the plain language of the statute requires the government to prove that Mr. Diakite knew the "means of identification" used in relation to his bank fraud and access device fraud belonged to another person. Because the government is unable to adduce such proof, the Court should dismiss Count Six.

    **B.    In the alternative, the Court should find that the government must prove that Mr. Diakite knew the "means of identification" belonged to another person because the statutory language is ambiguous.**

    "A statute is ambiguous if its terms are susceptible to two or more reasonable meanings." Sanchez, 2008 U.S. Dist. LEXIS 35460 at *12. The split in the circuits regarding the proper interpretation of the scienter requirement of § 1028A(a)(1) stems from the use of the adverb "knowingly" to modify the phrase "transfers, possesses, or uses, without lawful authority, a means of identification of another person." Courts have reached different conclusions regarding whether the adverb "knowingly" modifies the entire phrase that follows it, or only some portion of this phrase.

    Several courts, including the Eastern District of New York, have found that the language of the statute is ambiguous. See, eg. United States v. Sanchez, 2008 U.S. Dist. LEXIS 35460 (E.D.N.Y April 30, 2008); United States v. Mejorado-Cordova, 2008 U.S. Dist. LEXIS 44634 (D. Utah, June 5, 2008). In United States v. Sanchez, 2008 U.S.Dist.LEXIS 35460 (E.D.N.Y April 30, 2008), Judge Sifton concluded that the "[r]ules of grammar do not

Honorable Loretta A. Preska                           June 20, 2008
United States District Judge                          Page 8
Southern District of New York

              Re:   **United States v. Mady Diakite**
                    S1 08 CR 362 (LAP)


definitely resolve the issue . . . ." As Judge Sifton noted, the very fact "that different courts have reached opposing conclusions about the plain meaning of the statute tends to support a conclusion that the statute is ambiguous." Id., at *9, *11. Thus, as other courts have concluded, "[a]lthough the government's interpretation [of the statute] is plausible, nothing suggests it represents the only possible - or even the most plausible reading . . . ." United States v. Villaneuva-Sotelo, 515 F.3d at 1237.

If the Court finds that the statute is ambiguous, the Court should look to the purpose and legislative history to guide its interpretation of the statute.


C.  **The legislative history suggests that Congress intended to punish more harshly only those offenders who knowingly misappropriated the means of identification of another person.**

A review of the legislative history reveals that "Congress intended ... to single out thieves." Villaneuva-Sotelo, 515 F.3d at 1243. The title of the statute and the legislative history use the word 'theft' to characterize the offense. "The floor debate reveals a similar emphasis on theft." Id. at 1244. "An essential element of the crime of theft is the intent to deprive another person of property, requiring the defendant to know that the property acquired belonged to another." Sanchez, 2008 U.S. Dist. LEXIS 35460 at *14-15.

Moreover, all of the examples of identity theft provided in the legislative record involve intentional takings. See Villanueva-Sotelo, 515 F.3d at 1244. In each of the examples, "the offender knew that the means of identification belonged to an actual person." Sanchez, 2008 U.S. Dist. LEXIS 35460 at *14. "There is a salient difference between theft and accidental misappropriation." Villanueva-Sotelo, 515 F.3d at 1246. I urge the Court to conclude, as other courts have concluded, that "[v]iewing the list [of examples] in combination with the statute's title and the legislative record as a whole, . . .it [is] clear that Congress never intended its "aggravated identity theft statute to reach [accidental] conduct." Id.

Honorable Loretta A. Preska	June 20, 2008
United States District Judge	Page 9
Southern District of New York

Re: **United States v. Mady Diakite**
    S1 08 CR 362 (LAP)

None of the examples in the legislative history remotely resembles the conduct at issue here: bank fraud, in which unbeknownst to the defendant, one of the payor names on checks which were deposited belongs to an actual person. Rather, in each and every example there is a deliberate misappropriation of another's identity.[2] If the government's view is correct, any bank fraud or access-device fraud which involved a forged check would automatically result in an additional 2-year enhancement for aggravated identity theft. This is not what Congress intended.

### D. The Court must apply the rule of lenity.

If the Court finds that the language of the statute is ambiguous and its meaning cannot be clearly established by the legislative history, the Court should rely on the rule of lenity to interpret this statute. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." See United States v. Santos, 553 U.S. ___ (2008) (Slip. op., 6)(citations omitted.) "This venerable rule . . .vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." Id. The rule of lenity forbids the Court from "'interpreting a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'" Villanueva-Sotelo, 515 F.3d at 1244.

To the extent that any ambiguity remains regarding the meaning of § 1028A(a)(1) after attempts have been made to interpret both the text and the legislative history behind the statute, traditions "of fair play and justice ha[ve] always

---

[2]This would be an entirely different case, and one that the statute was designed to reach, if the government intended to prove that Mr. Diakite knowingly misappropriated the identities of Moussa Sylla or Ibrahima Conde, whom he knew were actual persons. However, this is not such a case, and the statute was never intended to reach the conduct at issue here.

Honorable Loretta A. Preska  
United States District Judge  
Southern District of New York  

June 20, 2008  
Page 10  

Re: **United States v. Mady Diakite**  
**S1 08 CR 362 (LAP)**

favored the interpretation in favor of the accused." United States v. Hairup, 2008 WL 471710, 12 (D. Utah 2008).

This case presents an issue similar to the issue recently addressed by the Supreme Court in United States v. Santos, 553 U.S. ___ (2008). In that case, the government sought an overly expansive application of the money laundering statute. Relying on the rule of lenity, Justice Scalia, writing for the majority, rejected the government's position, noting that if the government's view prevailed, "nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute. . ." Id. at p.8. The Supreme Court observed that the "Government suggests no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime." Id. at 9.

So too in this case, the government seeks an overly expansive application of the aggravated identity theft statute. If accepted, the government's view would result in nearly every bank fraud which is committed by depositing a forged check, to also be a violation of §1028A(1). The depositing of a forged check with intent to defraud a bank is a "normal part of" the crime of bank fraud which Congress has duly considered and appropriately punished elsewhere in the Criminal Code. There is no suggestion at all in the legislative history or anywhere else that Congress intended to radically increase the sentence for that crime. The Court should therefore, following the rule of lenity, interpret an ambiguous criminal statute "in favor of defendants, not prosecutors." Id. at 12.

Honorable Loretta A. Preska                                June 20, 2008
United States District Judge                               Page 11
Southern District of New York

> Re: **United States v. Mady Diakite**
>    **S1 08 CR 362 (LAP)**

**E.  The penalty associated with § 1028A(a)(1) is so severe that it should not be applied to offenders who accidentally misappropriate the identity of another person.**

The Court should follow the reasoning of the district court in <u>United States v. Hairup</u>, 2008 WL 471710 at *13:

> [I]f Congress intended to impose such a serious remedy on those who inadvertently or unknowingly implicate another person's identity in connection with a relatively minor act of passing a bad check, Congress could, and should, have clearly said so. It is one thing to send a person to prison for an extra two years for intentionally using another person's identity while passing a fraudulent check and another to subject a person to the same punishment where there was no such intent.

"Enhanced punishment of an individual who used an alias which unbeknownst to him happens to be the name of an actual person is not likely to deter another from inventing a name which happens to be that of an actual person. Nor does it seem entirely just or effective to subject a defendant to two years additional imprisonment for a circumstance ... over which the defendant has little control." <u>Sanchez</u>, 2008 U.S. Dist. LEXIS 35460 at *15-16.

Moreover, failure to require that the defendant knew the means of identification belonged to an actual person would result in an arbitrary application of the statute, as the colloquy between the prosecutor and the district court in <u>Villanueva-Sotelo</u> makes clear. The district court posed the following hypothetical: "So if the defendant picked a number out of the air and it was your number, he's guilty, but if he picked a number out of the air and Immigration and Customs Enforcement hasn't assigned it to anybody, he's not guilty?" <u>Villanueva-Sotelo</u>, 515 F.3d at 1237. Clearly, Congress could not have intended such a result.

The arbitrariness of the government's application of the statute becomes clear when applied to the facts of this case. The counterfeit checks deposited into Mr. Diakite's bank accounts

Honorable Loretta A. Preska  
United States District Judge  
Southern District of New York

June 20, 2008  
Page 12

Re: **United States v. Mady Diakite**  
S1 08 CR 362 (LAP)

were made out to either Ibrahima Conde or Moussa Sylla, identities which the government concedes it cannot prove are actual persons, and thus do not satisfy the elements of § 1028A(a)(1). However, because one of the signators on the checks is an actual person, the government argues that Mr. Diakite is subject to a sentence double that of his advisory guideline range.

The mandatory nature of the punishment in this case, which removes all discretion from the sentencing judge, indicates that Congress intended to punish harshly only those offenders who deliberately steal the identity of another person. In this case, under no circumstances will Mr. Diakite's offense conduct go unpunished. He will be and should be sanctioned for his offenses of bank fraud and access device fraud. However, he should not be subject to the mandatory minimum sentence required by section 1028A(a)(1) because his conduct does not satisfy the elements of that statute.

## Conclusion

For all of the above-stated reasons, Mr. Diakite's offense conduct will under no circumstances satisfy the *mens rea* requirement of § 1028A(a)(1). The Court should therefore dismiss Count Six of the indictment and set a sentencing date for the imposition of sentence on Counts One through Five.

Respectfully submitted,

Jennifer Brown  
Attorney for **Mady Diakite**  
(212) 417-8722

cc: Daniel Goldman, Esq.  
    Assistant United States Attorney

   Mady Diakite, MDC #60923-054